741 F.2d 180
 Fed. Sec. L. Rep. P 91,628
Gerald MELLMAN and Bernard Thorn, doing business as Mellman
and Thorn Investments, Individually on Behalf of
Themselves, and on Behalf of A Class of
Persons Similarly Situated, Appellants,
v.
SOUTHLAND RACING CORPORATION, an Arkansas Corporation, Appellee.
 No. 83-2653.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1984.
Decided Aug. 17, 1984.
 
 Alston Jennings, Wright, Lindsey & Jennings, Little Rock, Ark., for appellee.
 Harold J. Tomin, Los Angeles, Cal., Richard C. Downing, Little Rock, Ark., for appellants.
 Before BRIGHT and McMILLIAN, Circuit Judges, and LIMBAUGH,* District Judge.
 PER CURIAM.
 
 
 1
 Appellants, owners of Southland Racing Corporation (SRC) stock at the time of a reverse stock split in 1980, appeal from a final judgment entered in the District Court[1] for the Eastern District of Arkansas after a non-jury trial denying them relief for alleged violations of several provisions of the Securities Exchange Act of 1934. For reversal appellants argue that the district court erred in finding that (1) no conspiracy existed to defraud the non-affiliated minority shareholders of SRC, (2) the tender offer statements completely disclosed the material facts of the offer to SRC minority shareholders, (3) the 1980 shareholders' information statement fully disclosed the material facts regarding the reverse stock split, and (4) the price offered for SRC stock in the reverse stock split was a fair price. For the reasons discussed below, we affirm.
 
 
 2
 Bernard Thorn and Gerald Mellman, named appellants, operate an investment partnership which owned 120 shares of SRC stock at the time of a reverse stock split in 1980. The principal business of SRC, an Arkansas corporation, is conducting greyhound races and pari-mutuel wagering on that sport in West Memphis, Arkansas.
 
 
 3
 In the 1960s and 1970s, the major stockholders in SRC were the Upton family and a predecessor corporation of Delaware North Companies, Inc. (DNC), a holding company for stock of many operating companies in pari-mutuel, food service, sports publications, and metal fabrication industries. The predecessor corporation of DNC was convicted of mail fraud in 1972. Thereafter, distinguished law professor Robert A. Leflar was appointed voting trustee of DNC's shares of SRC stock on behalf of the Arkansas Racing Commission (Commission). This trusteeship continued until January 1975.
 
 
 4
 In 1974, to eliminate dissension between majority stockholders, SRC agreed to redeem the SRC stock owned by the Uptons for $25 per share. This transaction was approved by a special meeting of SRC's board of directors. The redemption plan was explained and submitted to the shareholders at the annual stockholders meeting. In addition, Leflar said that he would present the tranaction to the Commission and seek their approval.
 
 
 5
 Prior to the completion of the Upton redemption, DNC sought to find an acceptable manner in which it could regain control of its shares in SRC. For this purpose, Southland Holding Corporation (SHC) was formed. SHC was capitalized by a transfer of SRC stock owned by DNC and others for shares of SHC stock. This exchange and the identities of the parties involved were reported to the Commission, the Securities and Exchange Commission (SEC), and SRC shareholders. Upon transfer of DNC's SRC stock to SHC, Leflar wrote a letter to the Commission stating that he believed it was no longer necessary for him to continue as voting trustee of DNC. The Commission set aside the trusteeship and approved SHC as principal stockholder of SRC.
 
 
 6
 In an effort to "go private" in July 1976, SHC made a tender offer to purchase all outstanding SRC shares of common stock for $17 per share. The tender offer statements disclosed all material information to the shareholders. In 1977, another tender offer was made to purchase the remaining SRC shares at $25 per share. The required disclosures were made.
 
 
 7
 In 1979, Aubrey Spear, a member of the SRC board of directors, suggested to SHC president Harry Latourette that SRC should consider a reverse stock split. The purpose of this reverse stock split would be to enable SRC to reduce the number of non-affiliated SRC stockholders that SRC had been unable to contact for several years. SRC contacted Management Analysis Center, Inc. (MAC), an international management consulting firm, to determine a fair value of SRC common stock in connection with the anticipated reverse stock split. MAC determined that $44.52 per share was a fair price to be paid upon implementation of the reverse stock split. The valuation method and all assumptions were in accordance with generally accepted valuation practices and were fully disclosed to SRC shareholders in the Shareholders' Information Statement. The reverse stock split was approved by the shareholders at the annual meeting on April 22, 1980.
 
 
 8
 Immediately prior to shareholder approval of the reverse stock split, appellants commenced this action in the United States District Court for the Eastern District of Colorado seeking injunctive and monetary relief for alleged violations of Secs. 10b, 13e, and 14c of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78j(b), 78m(e), 78n(c)(1982), and rules promulgated thereunder by the SEC, 17 C.F.R. Sec. 240.10b-5, .13e-3, .14c-6 (1983). After preliminary injunctive relief was denied, this case was transferred to the Eastern District of Arkansas. Following a five-day non-jury trial and extensive post-trial briefing by both parties, the district court made extensive findings of fact and concluded:
 
 
 9
 SRC along with SHC, DNC and other individuals have not engaged in a conspiracy to defraud its non-affiliated minority shareholders by acquiring their equity interest in SRC for less than fair value.
 
 
 10
 SRC has not violated Sec. 10(b) of the Securities Exchange Act of 1934, and SEC Rule 10b-5. There has been no misstatement or omission of any material fact by SRC (or by persons chargeable to SRC) with the requisite scienter upon which plaintiffs have relied proximately resulting in any damages.
 
 
 11
 Assuming that there is a private right of action for damages for violation of SEC Rule 13e-3 (which has been promulgated by the SEC pursuant to Exchange Act Secs. 13e and 14e), SRC has not violated Rule 13e-3.
 
 
 12
 ....
 
 
 13
 The Shareholders' Information Statement dated March 21, 1980 fully disclosed the material facts with respect to the reverse stock split. The defendant had no intent to deceive, manipulate, or defraud the plaintiffs and plaintiff class.... This "going-private" transaction benefited SRC and was a legitimate corporate procedure....
 
 
 14
 Plaintiffs have failed to prove by a preponderance of the evidence that the defendant made any misrepresentation or omission of material fact with reckless disregard for its truth.
 
 
 15
 Defendant is entitled to entry of judgment in its behalf dismissing plaintiffs' class action complaint.
 
 
 16
 Mellman v. Southland Racing Corp., 575 F.Supp. 144 at 149-150 (E.D.Ark.1983) (citations omitted).
 
 
 17
 We have carefully reviewed the record and we find no error of law or fact on the part of the district court. Accordingly, we affirm on the basis of the district court's opinion. See 8th Cir.R. 14.
 
 
 
 *
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas